UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MAURICE BOYKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00046-JPH-MJD |
| | ) |
| FRANK VANIHEL Warden, | ) |
| CHARLENE A. BURKETT, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS SUMMARY JUDGMENT, ADDRESSING OTHER MOTIONS, AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Maurice Boykins filed this action alleging that Indiana Department of Correction ("IDOC") Ombudsman Charlene Burkett[1] and Wabash Valley Correctional Facility Warden Frank Vanihel ignored his requests to be put into protective custody because of threats to his safety from other inmates. Defendants have filed a motion for summary judgment. Dkt. 133. For the reasons below, that motion is **GRANTED** and final judgment will be entered in favor of Defendants. The Court also addresses and resolves other pending motions in this case.

**I. Background**

Mr. Boykins is an inmate from Virginia who was moved to IDOC custody for safekeeping. He filed this action on February 1, 2023, while an inmate at Wabash Valley Correctional Facility. Dkt. 2. Originally, the Court dismissed Mr.

---

[1] Ms. Burkett is employed by the Indiana Department of Administration to head the Department of Correction Ombudsman Bureau. Dkt. 135-1 at 3.

1

Boykins's complaint for failure to state a claim but Mr. Boykins amended his complaint. Dkt. 14; dkt. 15. On July 12, 2023, the Court screened the amended complaint and determined that it stated a viable claim under the Eighth Amendment for damages against Ombudsman Burkett based on allegations that she was made aware of threats against Mr. Boykins's safety but failed to take any action to assign him to protective custody or otherwise keep him safe from assault, although no such assaults had actually happened or appeared to be imminent. Dkt. 20 at 5. Also, the Court allowed a claim for injunctive relief to proceed against Warden Vanihel in his official capacity "because Warden Vanihel is best positioned to provide Mr. Boykins with his requested relief." *Id.*

On November 13, 2023, Mr. Boykins filed a motion for preliminary injunction, requesting that he be placed in protective custody pending transfer to a different Indiana prison. Dkt. 34. On December 6, 2023, Magistrate Judge Dinsmore held a telephonic status conference during which the parties acknowledged that Mr. Boykins was then in segregation at Wabash Valley and Mr. Boykins acknowledged on the record that his safety and security concerns were resolved so long as he was in segregation. Dkt. 40. During this conference, counsel for IDOC also agreed to notify the Court if it intended to move Mr. Boykins out of segregation or to a different facility. *Id.* On the basis of these representations, the Court denied the preliminary injunction motion. Dkt. 43. Thereafter, Mr. Boykins was moved to New Castle, after the matter was discussed with Magistrate Judge Dinsmore. Dkts 46, 62, 64. Also, Mr. Boykins moved to reconsider the denial of his preliminary injunction motion, which the Court

2

denied. Dkts. 48, 57. However, the Court did reconsider its previous denial of Mr. Boykins's request for counsel. Dkt. 57.

On March 7, 2024, the Court recruited counsel to represent Mr. Boykins. Dkt. 69. After Magistrate Judge Dinsmore held both an in-person and two telephonic status conferences with recruited counsel and counsel for defendants, a settlement conference was scheduled for July 26, 2024. Dkts. 75, 81, 88, 95. However, a few days before the conference, Mr. Boykins asked to have recruited counsel removed, making allegations of misconduct that recruited counsel vigorously denied. Dkts. 97, 99. The Court allowed recruited counsel to withdraw and declined to attempt to recruit a different attorney for Mr. Boykins. Dkt. 101. Because of recruited counsel's withdrawal, Magistrate Judge Dinsmore vacated the settlement conference. Dkt. 98. Mr. Boykins has also filed repeated motions requesting recruitment of a different attorney. Dkts. 105, 139; 158.

Also, on April 10, 2024, Mr. Boykins filed a new pro se preliminary injunction motion, although he was then represented by recruited counsel. Dkt. 71. On May 13, the Court denied this motion. Dkt. 82. First, it noted that Mr. Boykins should not be filing pro se motions while represented by counsel. *Id.* Second, it noted that Mr. Boykins was no longer at Wabash Valley, so injunctive relief could no longer be sought against Warden Vanihel. *Id.* The Court notes that Mr. Boykins thereafter did file a new cause of action, *Boykins v. Gilbert et al.*, 1:24-cv-00761-RLY-KMB, which is proceeding with an injunctive relief claim against New Castle Warden Mark Sevier related to Mr. Boykins's requests to be placed in protective custody there. *Id.* at dkt. 25.

3

On June 26, Warden Vanihel filed a motion to dismiss Mr. Boykins's claims against him. Dkt. 89. Also pending before the Court are several filings by Mr. Boykins, including a "motion of retaliation claim," dkt. 107, a motion for partial summary judgment (against Ombudsman Burkett only), dkt. 113, another motion for preliminary injunction, dkt. 130, a motion for status update, dkt. 137, and a "motion to file interference claim," dkt. 144. Defendants have also filed a motion for summary judgment, dkt. 133, and motions to strike several of Mr. Boykins's most recent filings, dkt. 145 and 149. Mr. Boykins did not respond to the motion to dismiss or to Defendants' summary judgment motion.

## II. Mr. Boykins's Renewed Motions for Counsel

Mr. Boykins's first renewed motion for counsel states that he wishes to apologize to the Court and recruited counsel for causing her to withdraw from the case. Dkt. 105. He seems to suggest he became paranoid over some things that were said by counsel for Defendants and a prison guard during his deposition. He also mentions that he takes medication for his paranoia. Mr. Boykins's second and third renewed motions state that he is "illiterate," that his mental health problems make it challenging to litigate, and that those problems contributed to the removal of recruited counsel. Dkt. 139; dkt, 158. The motion also suggests that his family might pay for an attorney to represent him, but that has not happened as of today's date, several months after the filing of this motion.

The Court appreciates Mr. Boykins's apology and candor about recruited counsel's withdrawal from this case. However, the Court reiterates that recruitment of counsel in a civil case such as this is a privilege, not a right. *See Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). And as a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

Also, when deciding whether to recruit counsel for a pro se plaintiff, courts must consider the factual and legal complexity of the claims and the plaintiff's competence to litigate them himself. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)).

Mr. Boykins argues that he is illiterate and suffers from paranoia. His court filings, however, show that he is capable of writing persuasively and intelligently on his own behalf. Furthermore, the issues in this case are not very complex, legally or factually. For instance, there is no need for expert evidence or testimony to prove or disprove Mr. Boykins's claims. And Mr. Boykins's motion for partial summary judgment, regardless of its merit, demonstrates an

5

understanding of the relevant legal and factual issues in this case. The Court therefore **DENIES** Mr. Boykins's renewed motions for counsel, dkts. [105], [139], and [158].

Last, Mr. Boykins has had ample time to retain counsel, dkt. 139, and respond to Defendants' pending motions, whether *pro se* or with retained counsel. On August 12, 2024, the Court advised Mr. Boykins that he was as of then representing himself in this matter and would be responsible for meeting all case deadlines going forward. Dkt. 103. Given this warning and the Court's notice to Mr. Boykins that it was not going to recruit a new attorney, dkt. 101, and because the Court has already extended deadlines to respond to both the motion to dismiss and the cross-motion for summary judgment, dkts. 103 and 143, the Court will not further extend the timeframe for Mr. Boykins to respond to Defendants' motions or make additional filings in support of his own motions.

## II. Cross-Motions for Summary Judgment

### A. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

### B. Facts

In 2021, Mr. Boykins was transferred from a prison in West Virginia to Wabash Valley, where he remained until January 26, 2024, when he was transferred to New Castle. Dkt. 135-2 at 11. Mr. Boykins states that he has been in constant fear of being attacked by gang members, who have told him "they gonna send me back to Virginia in a box alleging they was gonna kill me, that no matter where I go in Indiana that I won't be safe." Dkt. 115 at 1.

Mr. Boykins has written to Ombudsman Burkett dozens of times, expressing various concerns about his safety and sometimes stating that his requests to be placed in protective custody were being improperly denied by prison officials. Dkt. 135-3. Ombudsman Burkett responded to some of these messages. For example, on December 29, 2022, Ombudsman Burkett acknowledged one of Mr. Boykins's messages and stated in part, "You refused protective custody on December 5th by not signing the paperwork and have not requested protective custody since. You are currently housed in the RHU unit which is the safest place for you." Dkt. 114-1. In another response dated July 17, 2024, Ombudsman Burkett stated in part, again, that Mr. Boykins was then in an RHU "which is the safest place for you. Therefore, the facility has no reason to believe a location is unsafe for you unless you provide specific imminent threats in a specific location." Dkt. 114-4. There is no evidence or allegation in the designated record that Mr. Boykins has ever actually been assaulted by another inmate.

8

Ombudsman Burkett did not attempt to have Mr. Boykins placed in protective custody, and states that she lacks authority to do so. Dkt. 135-1 at 9-10. She also states that the IDOC Ombudsman's office is a part of the Indiana Department of Administration, not the IDOC. *Id.* at 3-4. She accordingly lacks authority to supervise IDOC employees or to train them regarding inmate safety. *Id.* at 12. She does have authority to investigate complaints made by IDOC inmates. *Id.* at 5.

Mr. Boykins admits in his declaration in support of his partial summary judgment motion that his claim for injunctive relief against Warden Vanihel is now moot, given his current incarceration at New Castle. Dkt. 115 at 2.

### C. Discussion

#### 1. Ombudsman Burkett

In adjudicating the summary judgment motions, the Court assumes that Mr. Boykins has experienced constant threats of violence from inmates at Wabash Valley and New Castle, which has caused him severe psychological distress. *See, e.g.*, *Bolden v. Mezo*, No. 22-1571, 2023 WL 4488861, at *2 (7th Cir. July 12, 2023) (stating that a prisoner alleging failure to protect still "might recover punitive or nominal damages if a defendant psychologically injured him."); *but see Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) (holding that a "failure to prevent exposure to risk of harm" where no assault by another inmate has occurred is not by itself a recognizable failure-to-protect injury).

Even so, Ombudsman Burkett is entitled to qualified immunity. "[Q]ualified immunity shields officials from civil liability so long as their conduct

9

'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)).

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). Although "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular

enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2017) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)). Qualified immunity thus "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

Here, when Ombudsman Burkett invoked qualified immunity, it became Mr. Boykins's burden to defeat the defense. *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021) ("Once the defense is raised, it becomes the plaintiff's burden to defeat it."). By failing to respond to Defendants' motion for summary judgment, Mr. Boykins has failed to identify a sufficiently analogous case dealing with facts similar to this lawsuit, nor has he explained why Ombudsman Burkett's actions were so obviously violative of the Eighth Amendment that any reasonable person would have recognized them as such. *See Findlay*, 722 F.3d at 900. As the Seventh Circuit has explained, that's fatal to overcoming a qualified immunity defense. *Id.*; *Soriano*, 521 F. App'x at 567. Moreover, the designated evidence shows that Ombudsman Burkett lacked the authority and ability to take any direct or mandatory action to remedy his situation. Dkt. 135-1. This designated evidence is consistent with applicable Indiana statutes providing that the ombudsman "may" investigate complaints and "may recommend" changes. Ind. Code § 4-13-1.2-1 *et seq.*; *Duvall v. Burkett*, No. 1:18-cv-3768-SEB-DLP, 2022

11

WL 125334 (S.D. Ind. Jan. 13, 2022) (granting summary judgment to Ombudsman Burkett because her statutory role is discretionary and advisory).

Under these facts Mr. Boykins has not carried his burden to show that Ombudsman Burkett violated a "clearly established" right of Mr. Boykins. She is entitled to judgment as a matter of law because of qualified immunity.

### 2. Warden Vanihel

Warden Vanihel previously filed a motion to dismiss arguing that Mr. Boykins's claim against him for injunctive relief was moot. Dkt. 89; 90. Mr. Boykins did not respond to that motion. Moreover, Mr. Boykins has acknowledged in his partial motion for summary judgment that any claim for injunctive relief against Warden Vanihel—the only claim allowed to proceed against him at screening—is now moot. "A case becomes moot [and the federal courts lose subject matter jurisdiction] when it no longer presents a case or controversy under Article III, Section 2 of the Constitution. 'In general, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Eichwedel v. Curry*, 700 F.3d 275, 278 (7th Cir. 2012) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)); *see also Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending . . . that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the [case] must be dismissed.") (quoting *Mills v. Green,* 159 U.S. 651, 653 (1895)). In particular, claims for injunctive relief related to an inmate's conditions of confinement are moot once an inmate is transferred to a different facility. *See Pearson v. Welborn*,

12

471 F.3d 732, 743 (7th Cir. 2006). S*ee also Howe v. Godinez,* 558 F. Supp. 3d 664, 667 (S.D. Ill. 2021) ("An inmate's transfer from the facility complained of moots the equitable and declaratory claims unless his return to the facility is certain.") (citing *Ortiz v. Downey,* 561 F.3d 664 (7th Cir. 2009); *Preiser v. Newkirk*, 422 U.S. 395, 401–04 (1975)). Thus, Warden Vanihel also is entitled to judgment as a matter of law.

### III. Motion for Preliminary Injunction

Mr. Boykins's third preliminary injunction motion seeks to require Ombudsman Burkett to recommend or ensure his placement into protective custody at New Castle. Dkt. 130. It also seems to allege a conspiracy to interfere with his mail, and/or by counsel for Defendants to compel him into agreeing to an unacceptable settlement that would result in his return to a Virginia prison. *Id.*

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "[A] preliminary injunction is an exercise of a very far-reaching power,

13

never to be indulged in except in a case clearly demanding it." *Orr v. Shicker,* 953 F.3d 490. 501 (7th Cir. 2020) (cleaned up).

As discussed above, Ombudsman Burkett is entitled to summary judgment because Mr. Boykins has not shown a violation of any clearly established right. Mr. Boykins therefore does not have a likelihood of success on his claims against Ombudsman Burkett. To the extent Mr. Boykins is also raising general interference or retaliation claims, they are not subjects of this lawsuit. His motion for a preliminary injunction is denied.

### IV. Mr. Boykins's Claims of "Retaliation" or "Interference"

Mr. Boykins's has repeatedly attempted to add new claims in this case regarding alleged "retaliation" or "interference" by various prison officials, who are not currently defendants in this action. Dkts. 107, 144, 148. The Court construes these filings as attempts to amend the complaint in this case to add entirely new clams against entirely new parties. Defendants have moved to strike two of Mr. Boykins's most recent filings as "immaterial" under Federal Rule of Civil Procedure 12(f). Dkts. 145 and 149.

Per the Court's scheduling order issued on January 5, 2024, any amended pleadings in this case were due on February 20, 2024. Mr. Boykins's first attempt to add "retaliation" claims in this case was filed on August 14, 2024. Dkt. 107. His more recent attempt was filed on November 21, 2024. Dkt. 144.

"To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause.'" *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.,* 424 F.3d 542, 553 (7th Cir.

14

2005) (citing *Fed. R. Civ. P.* 16(b)). In other words, "[w]hen a plaintiff seeks to amend his complaint after the expiration of the trial court's deadline to amend pleadings, the initial standard to be applied is not the 'freely given' standard of Federal Rule of Civil Procedure 15 . . . but rather the 'good cause' standard of Rule 16(b)." *Dowers v. Mize*, No. 1:09-CV-0270-LJM-DML, 2010 WL 2694995, at *2 (S.D. Ind. July 2, 2010). "Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *Id.* In this situation, the Court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 733-34 (7th Cir. 2014). "The central consideration in assessing whether good cause exists is the diligence of the party seeking to amend." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852–53 (7th Cir. 2022) (citing, among others, Fed. R. Civ. P. 6(b)(1) (which provides that a district court may extend a missed deadline for "good cause" when a "party failed to act because of excusable neglect")).

Also, joinder of claims and defendants into one action is proper only "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). In short, the courts do not allow an inmate to treat a single federal complaint as a sort of general list of grievances. *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the [Prison

15

Litigation Reform Act's] PLRA's fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies.").

Here, Mr. Boykins sought leave to amend many months after the applicable deadline, and the claims he sought to add would likely have been misjoined with the pending claims against Ombudsman Burkett and Warden Vanihel. Mr. Boykins has not adequately shown good cause for attempting to belatedly amend his complaint. As such, his "Motion of Retaliation Claim," dkt. [107], is **DENIED**. Defendants' motion to strike the more recent filings as immaterial, dkts. [145] and [149], are **GRANTED**. The **clerk is directed** to strike the filings at dkts. [144] and [148].

## V. Conclusion

Mr. Boykins's renewed motions for counsel, dkts. [105], [139], and [158], are **DENIED**. His motions for partial summary judgment, dkt. [113], and for a preliminary injunction, dkt. [130], are **DENIED**. His "Motion of Retaliation Claim," dkt. [107], is **DENIED**. Defendants' motions to strike, dkts. [145] and [149], are **GRANTED**. The **clerk is directed** to strike the filings at dkts. [144] and [148]. Mr. Boykins's motion for status update, dkt. [137], is **GRANTED** to the extent this Order provides said update.

Defendants' motion for summary judgment, dkt. [133], is **GRANTED**. The motion to dismiss, dkt. [89], is **GRANTED** because Mr. Boykins's injunctive-relief claim is moot. Final judgment shall issue by separate entry, consistent with this Order and the screening order, dkt. 20.

**SO ORDERED.**

Date: 2/24/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

MAURICE BOYKINS
285506
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362